United States District Court

For the Northern District of California

1

2

3

4

5

6

7 IN THE UNITED STATES DISTRICT COURT

8 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10 DAVID WHITE,                                    No. C 05-784 SBA

11            Plaintiff,                           **ORDER**

12     v.

13 TOM HANSEN, et. al.,

14            Defendants.

15 _____/

16        This matter comes before the Court on Plaintiff's Motion for Leave to File the proposed Second

17 Amended Complaint ("SAC") and Defendant Microgenics Corporation's Motion to Dismiss Plaintiff's First

18 Amended Complaint ("FAC"), Motion to Strike portions of the FAC, and Motion for More Definite

19 Statement.  Having read and considered the arguments presented by the parties in the papers submitted to

20 the Court, the Court hereby finds the matter appropriate for resolution without a hearing.  The Court

21 HEREBY DENIES Plaintiff's Motion for Leave to File the proposed SAC, GRANTS Microgenics'

22 Motion to Dismiss, GRANTS IN PART and DENIES IN PART the Motion to Strike, and DENIES the

23 Motion for More Definite Statement.

24                          **BACKGROUND**

25 **A.     Facts**

26

27

28

David White ("Plaintiff") began working as a materials handler for Microgenics ("Defendants"[1]) on February 23, 2000. FAC at ¶ 12. Plaintiff earned a promotion to Lead Position in the Material and Inspection Department during July, 2002. *Id.* Plaintiff received merit pay raises and maintained stellar job performance in his position. *Id.*

In July 2002, Tom Hansen ("Hansen") became manager/supervisor of Plaintiff's department. *Id.* at ¶ 13. During this time, Plaintiff was instrumental in developing the department's job titles, duties, definitions, and procedures "with the promise of [a] promotion and pay raise." *Id.* Rather than give him a raise as promised, Hansen began taking credit for Plaintiff's work and told Plaintiff that if "he kept his mouth shut" he would be promoted. *Id.*

In or around October 7, 2003, Plaintiff attended a meeting where Defendants decided to make a shipment of test kits for heart patients that Plaintiff alleges were defective. *Id.* at ¶ 14. Plaintiff questioned the decision, believing that the defective test kits endangered the public, but was told to "keep out of it." *Id.*

Between October and December of 2003, Plaintiff observed numerous instances of Hansen making crude statements about female and minority employees. *Id.* at ¶ 16. Plaintiff reported these incidents to Marianne Allen in Human Resources toward the end of March, 2004. *Id.* at ¶ 17.

On January 29, 2004, Plaintiff received an e-mail from Hansen confirming that he had promised Plaintiff a promotion. *Id.* at ¶ 18. Meanwhile, conditions in Plaintiff's department continued to deteriorate. *Id.* The inspection area was being overrun with "non-conforming material." *Id.* When Plaintiff tried to address the prevalence of "non-conforming material" during a meeting, Hansen threatened to "restructure the dep[artmen]t" if Plaintiff did not stop calling attention to the problems. *Id.* at ¶ 19.

In February 2004, Plaintiff informed Allen about Hansen's threats and harassment, including Hansen's remark that "[plaintiff] should be sucking his dick." *Id.* at ¶ 20. At some point, Plaintiff had asked Hansen to stop speaking to him in that manner, but Hansen refused and

---

[1]In Opposition, Plaintiff asserts that Defendant Apogent Technolgoies Inc. "was doing business as Microgenics at the time most of these causes of action occurred." Declaration of Lezly Crowell, ¶ 7. According to the FAC, Defendant Fisher Scientific merged with Apogent on August 2, 2004. FAC at ¶ 5. In addition, although they are not named in the caption of the FAC, Plaintiff also names Tom Hansen, Marianne Allen, and Bill Picht as "parties." For purposes of the memo, they will collectively be referred to as "Defendants" unless otherwise noted.

2

instead belittled him in front of his co-workers. *Id*. As a result, Plaintiff became ill, lost sleep, endured severe headaches, and felt noxious whenever he was around Hansen. *Id.* Allen told Plaintiff that she would inform Bill Picht, a Vice-President, about the problems Plaintiff was having with Hansen. *Id.*

Picht contacted Plaintiff and told him that he was going to set up a meeting between Plaintiff and Hansen. *Id*. When Plaintiff reiterated his concern that Hansen would retaliate against him, Picht assured Plaintiff that he would not allow that to occur. *Id*. Picht scheduled a meeting between Plaintiff and Hansen for March 31, 2004. *Id.* At the meeting, Plaintiff recounted Hansen's treatment of him since October. *Id.* at ¶ 21. Hansen then produced Plaintiff's phone records and alleged that Plaintiff had used the company phone to make personal calls. *Id.* Plaintiff alleges that all of Defendants' employees use the company phones for personal use and that Hansen's actions were taken to retaliate against him. *Id.*

On April 15, 2004, Plaintiff received a "first and final warning" that accused Plaintiff of misuse of company property, insubordination, and making false statements. *Id*. That same day, Plaintiff was demoted to "inspector 1" and received a $3.00 per hour pay cut. *Id.* at ¶ 22. The retaliation escalated to the point where it was causing Plaintiff severe headaches, loss of sleep, and stomach problems. *Id*. Hansen deliberately ostracized Plaintiff from his co-workers, altered evaluations Plaintiff had written, held "secret meetings" with Plaintiff's co-workers, taunted him and took away his computer. *Id.* at ¶ 24.

On May 7, 2004, Plaintiff informed Hansen that he had an appointment and that he was leaving early from work. A few days later, Hansen requested proof of where Plaintiff had been on May 7, 2004, although Hansen had never asked other employees to provide proof in similar situations. *Id.* at ¶ 25.

On August 2, 2004, Plaintiff was informed that Hansen attempted to use another employee to provoke Plaintiff in a ploy to find cause to fire Plaintiff. *Id*. at ¶ 29. On August 13, 2004, Plaintiff was "going to the store," and Hansen asked if he was "walking or driving." *Id*. at ¶ 30. Plaintiff said he was driving, to which Hansen responded "good, I wouldn't want to see you get hurt." *Id*. Plaintiff interpreted this as a threat on his life. *Id*. On August 17, 2004, Plaintiff filed a DFEH/EEOC complaint alleging sexual harassment and disability discrimination. *Id*. at ¶¶ 29-30; Declaration of Kristen Dumont ("Dumont Decl.")

Ex. A.[2] Although the incidents on August 2 and August 13 occurred before he filed his administrative complaints, Plaintiff asserts that Hansen was retaliating against Plaintiff for "reporting Hansen's actions to Allen, EEOC, and [the Department of] Fair Employment and Housing." *Id.* ¶¶ 29-30. Plaintiff alleges that Defendants condone Hansen's behavior. FAC at ¶ 33.

Plaintiff has exhausted all his administrative remedies and possesses right-to-sue letters from the DFEH and EEOC. *Id.* at ¶ 34.

**B.     Procedural History**

This action was removed from state court on February 23, 2005. On April 6, 2005, Plaintiff filed the First Amended Complaint. Defendants filed their motions to dismiss, to strike, and for more definite statement on May 17, 2005. On June 22, 2005, one day after his deadline for filing an Opposition, Plaintiff filed a document bearing the ECF notation "Stipulation re extension to file responses to defendants' motions and to file second amended verified complaint." [Docket No. 28.] However, the document actually filed under Docket No. 28 is a stipulation that had been filed earlier in the litigation that provided *Defendants* additional time to respond to the FAC. Indeed, the document filed under Docket No. 28 is identical to the document filed under Docket No. 17.

On June 27, 2005, Plaintiff filed a Request to Change Hearing Dates, in which Plaintiff represented that Defendants had agreed to continue the hearing from July 12, 2005 to August 2, 2005.  [Docket No. 32.]  Plaintiff asserted that such extension was necessary because she has seven cases in Juvenile Court in Hayward on July 12, 2005 and is having surgery on July 13, 2005. On that same date, Plaintiff filed a request to file a SAC and the proposed SAC.  [Docket Nos. 29 & 30.]  Plaintiff also filed untimely oppositions to the Motion to Dismiss, Motions to Strike and for More Definite Statement. [Docket Nos. 31, 33 & 38.][3]

On June 28, 2005, Defendants filed a response asserting that they had *not* stipulated to any

---

[2]The DFEH/EEOC complaint is not attached to the FAC. Although the Court is generally confined to consideration of the allegations in the pleadings, "a document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994).

[3]Docket Nos. 33 and 34 are identical.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  extension of the hearing date and that they had cleared the July 12, 2005 hearing date with Plaintiff in

2  advance of filing their motions. In addition, Defendants asserted that they reminded Plaintiffs' counsel on

3  three separate occasions in early and mid-June that Plaintiff's oppositions were due shortly. On June 30,

4  2005, the Court granted Defendants leave for additional time to file Reply briefs in light of Plaintiff's

5  untimely oppositions.[4]

6  **DISCUSSION**

7  **1.    MOTION FOR LEAVE TO FILE PROPOSED SAC:**

8      Plaintiff's proposed SAC fails to address a number of the issues raised in the Motion to Dismiss.

9  Thus, rather than granting Plaintiff leave to file the proposed SAC, the Court shall evaluate the Motion to

10  Dismiss the FAC on the merits and provide Plaintiff direction on how to properly amend the FAC.

11  Accordingly, Plaintiff's motion for leave to file the proposed SAC is DENIED.

12  **2.    MOTION TO DISMISS:**

13  **Legal standard**

14      Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if it

15  appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would

16  entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  For purposes of such a motion, the

17  complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations

18  are taken as true.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest and Jennings, Inc. v.*

19  *American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).  All reasonable inferences are to be

20  drawn in favor of the plaintiff.  *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

21      When a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless

22  the court determines that the allegation of other facts consistent with the challenged pleading could not

23  possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401

24  (9th Cir. 1986).  The court should consider factors such as "the presence or absence of undue delay, bad

25  faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the

26

27  ――――――――――――――――――

28      [4]Although Plaintiffs' oppositions were untimely filed, the Court shall still consider them and address the merits of Defendants' motions.

1  opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d

2  531, 538 (9th Cir. 1989).  Of these factors, prejudice to the opposing party is the most important.  *See*

3  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v.*

4  *Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971)).  Leave to amend is properly denied "where the

5  amendment would be futile."  *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 ( 9th Cir. 1992).

<u>Analysis</u>

**I.** **First Cause of Action: "Discrimination-Harassment under Title VII of the Civil Rights Act**
**and Whistleblower Act;" Fourth Cause of Action:"Sexual Harassment-Violation of**
**California Government Code § 12940 et. seq."**

As a preliminary matter, it is unclear from the FAC what type of discrimination Plaintiff is alleging

under the first cause of action. However, based upon the general allegations of the FAC and those

specifically pled under the first cause of action, it appears Plaintiff is alleging a claim for sexual harassment

and for violation of the "Whistleblower Act. [sic] 1989." The fourth cause of action alleges sexual

harassment under FEHA.

**A.** **Sexual Harassment**

Sexual harassment under Title VII and FEHA operate under the same guiding principles.

Accordingly, the court need only assess this claim under federal law.  *Brooks v. City of San Mateo*, 229

F.3d 917, 923 (9th Cir. 2000) ("While Brooks [plaintiff] argues that she was subjected to sexual

discrimination under Title VII as well as FEHA, we need only assess her claim under federal law because

Title VII and FEHA operate under the same guiding principles"). Sexual harassment, which is a "species"

of sexual discrimination, falls into two major categories: hostile work environment and quid pro quo. *Id.*

**1.** **Hostile Work Environment**

Sexual harassment under a "hostile work environment" theory occurs where: (1) the plaintiff was

subjected to sexual advances, requests for sexual conduct, or other verbal or physical conduct of a sexual

nature; (2) the conduct was unwelcome; and (3) the conduct was subjectively and objectively sufficiently

severe or pervasive to alter the conditions of the plaintiff's employment and create a sexually abusive or

hostile work environment; *See Fuller v. City of Oakland, California*, 47 F.3d 1522, 1527 (9th

Cir.1995); *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1991). The number of incidents necessary

United States District Court
For the Northern District of California

6

for a work environment to become hostile varies with the severity of the conduct. *Brooks*, 229 F.3d at 925-26. For a single incident to support a hostile work environment claim, it must be severe. *Id.* "[A] sexual assault by a supervisor, even on a single occasion, may well be sufficiently severe so as to alter the conditions of employment and give rise to a hostile work environment claim." *Id.* at 927.

Here, Plaintiff has failed to allege sufficient facts, which if true, would demonstrate that he was subjected to a hostile work environment. While Plaintiff has alleged that Hansen directed one comment that was ostensibly sexual in nature toward him (i.e. that Plaintiff should be "sucking his dick") and that the comment was unwelcome, Plaintiff fails to allege facts in support of the other elements of a Title VII hostile work environment claim.

First, Plaintiff fails to allege that he perceived his working conditions to be *sexually* abusive or hostile – that is, Plaintiff does not allege that he was subjected to hostility because of his sex. Indeed, Plaintiff has failed to even allege that he perceived Hansen's comment to be a request for a sexual favor. Moreover, in light of the facts provided, it is unlikely that a reasonable man in Plaintiff's position[5] would have considered Hansen's comment, in isolation, sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive or hostile work environment. *See Brooks*, 229 F.3d at 924 (suggesting that one severe incident of *physical assault* might support a hostile work environment cause of action). Here, there are no allegations of any other sexual conduct, either verbal or physical, directed toward Plaintiff or any other man.[6] Accordingly, Plaintiff's hostile work environment claim is DISMISSED with leave to amend.

### 2.    Quid Pro Quo

"Quid pro quo" sexual harassment occurs "whenever an individual explicitly or implicitly conditions a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct." *Nichols v. Frank*, 42 F.3d 503, 511 (9th Cir. 1994) (adopting the EEOC guidelines defining sexual

---

[5]"[W]hen evaluating a sexual harassment claim, a reasonable employee is one of the same sex as the complainant." *Fisher v. San Pedro Peninsula*, 214 Cal. App.3d 611, 613 (1989).

[6]Moreover, that Plaintiff heard Hansen make vulgar remarks about *women*, even if true, is irrelevant. Plaintiff provides no connection between such comments and *his* employment situation. Indeed, Plaintiff does not even allege that these comments caused him to perceive his work environment as hostile toward him because of his sex.

United States District Court
For the Northern District of California

harassment); s*ee, e.g.,  Heyne v. Caruso*, 69 F.3d 1475, 1478-79 (9th Cir. 1995) (employee presented a prima face case when she alleged that she was propositioned by her boss, refused, and got fired the next day).

Plaintiff alleges that Hansen told him that he should be "sucking his dick" and that Plaintiff asked Hansen to stop making such comments. FAC at ¶ 20. As a preliminary matter, Plaintiff does not actually allege that the comment was a request for a sexual favor. Even if it was, Plaintiff does not allege that a job, a job benefit, or the absence of a job detriment was a condition of complying with any such sexual favor. Accordingly, Plaintiff has failed to adequately plead a cause of action for quid pro quo sexual harassment, and the claim is DISMISSED with leave to amend.[7]

### B.     Whistleblower Act of 1989

Plaintiff's first cause of action seeks relief under the Whistleblower Act of 1989. FAC at ¶ 36. However, the Whistleblower Protection Act of 1989 applies only to federal employees of "Executive agencies" and the "Government Printing Office," not private parties. 5 U.S.C. § 2301, et. seq. Plaintiff has not alleged that he is a federal employee, and Defendants are not part of the federal government. Moreover, in Opposition, Plaintiff asserts that he is *not* suing under this statute, but does not identify an alternative statute under which he is seeking relief. Opp. to MTD at 4. Accordingly, to the extent this cause of action is based upon the Whistleblower Protection Act of 1989, it is DISMISSED WITH PREJUDICE. The Court grants Plaintiff leave to amend to state a cause of action under an applicable statute. However, Plaintiff is instructed to allege any such claim under a separate and distinct cause of action.

## II.   Second Cause of Action: "Discrimination - Gov. Code Section 12940 et seq."

### A.     Legal Standard

A discrimination claim under FEHA requires making a prima facie case alleging that Plaintiff (1)

---

[7]Although the FAC does not include a claim for racial discrimination, in his Opposition, Plaintiff asserts that he is Native American and therefore appears to argue that he states a claim for racial discrimination. Opposition to MTD at 4. Plaintiff also asserts that he has included this allegation in his proposed SAC. Racial discrimination occurs where a plaintiff (1) suffers an adverse employment action, and (2) that the plaintiff's race was a motivating factor in the defendant-employer's decision. 42 U.S.C. § 2000e-2(a), (m). As a preliminary matter, the proposed SAC still fails to allege that his race was a motivating factor in any adverse employment action. Moreover, because Plaintiff did not include an allegation of race discrimination in his DFEH/EEOC charge, the Court lacks subject matter jurisdiction over any racial discrimination claim. *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (The jurisdictional scope of a Title VII claimant's action depends upon the scope of the administrative charge).

was a member of a protected class, (2) was competently performing in his position, (3) suffered an adverse employment action, and (4) some other circumstance suggests discriminatory motive. *Guz v. Bechtel Nat., Inc.*, 24 Cal. 4th 317, 355 (2000). Only discrimination based on the following is prohibited under California law: race; color; ancestry; national origin; religious creed; sex and sexual orientation; marital status; pregnancy, childbirth, or related medical conditions; physical and mental disability; medical condition; or age, with respect to persons 40 years or older. Cal. Gov. Code §§ 12940(a), 12943, 1945; *see also* Cal Gov. Code §§ 12926(b), (h), (I), (o), (p); M. Kirby Wilcox, California Employment Law § 40.10[5] (2005). Title VII only prohibits discrimination based on race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a).

**B.      Analysis**

As a preliminary matter, Plaintiff does not allege what type of discrimination he suffered. To the extent he alleges that he suffered sex discrimination under FEHA, Plaintiff fails to state a claim for the reasons discussed under the first cause of action. To the extent he alleges discrimination on any other basis, he has utterly failed to plead any facts in support thereof.

Moreover, to the extent Plaintiff alleges discrimination other than sex and disability discrimination, he has failed to exhaust his administrative remedies. Courts lack jurisdiction over FEHA claims not properly brought before the DFEH. *See Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1726 (1994). In his DFEH/EEOC charge, Plaintiff alleges only two types of discrimination: sexual discrimination and disability discrimination. Dumont Decl. Ex. A. To the extent that Plaintiff intended to claim discrimination on any other basis (i.e. race), he has failed to exhaust his administrative remedies as to such claim.  Accordingly, the second cause of action is DISMISSED with leave to amend.

**III.      Third Cause of Action: Retaliation under FEHA; Sixth Cause of Action: Retaliation under Title VII.[8]**

**A.      Legal Standard**

A prima facie case for retaliation under both Title VII and FEHA exists where (1) [plaintiff]

---

[8]The sixth cause of action redundantly seeks relief for retaliation under both FEHA and Title VII. Because the third cause of action seeks relief for retaliation under FEHA, the sixth cause of action is construed as brought under Title VII. The third and sixth causes of action also include reference to the "Whistleblowing Act. 1989." As discussed *supra*, this statute does not apply to the instant action.

**United States District Court**
For the Northern District of California

engaged in protected activity, (2) his employer subjected him to an adverse employment action, and (3) the employer's action is causally linked to the protected activity. *EEOC v. Dinuba Medical Clinic*, 222 F.3d 580, 586 (9th Cir. 2000); *Mathieu v. Norrell Corp.*, 115 Cal.App.4th 1174, 1185 (2004). Plaintiffs who have opposed any unlawful employment practice under Title VII or FEHA engage in protected activities. *Dinuba Medical Clinic*, 222 F.3d at 586. *Mathieu*, 115 Cal.App.4th at 1185. As long as a plaintiff reasonably believed that Title VII forbade the employment actions they opposed, they receive opposition clause protection. *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1014 (9th Cir. 1983); *Flait v. North Am. Watch Corp.*, 3 Cal. App. 4th 467, 477 (1992). Participation in any EEOC hearing, regardless of its merits, also shields an employee from retaliation. *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978); *see Mathieu*, 115 Cal.App.4th at 1185.

### B.    Analysis

Here, Plaintiff has alleged some, but not all, of the elements of a retaliation cause of action. Plaintiff reported the sexual remark Hansen directed toward him to Human Resources. FAC at ¶ 20. Plaintiff also reported the vulgar remarks Hansen made about certain women. *Id*. at ¶ 16. Even if these comments are insufficient to state a claim for sexual harassment, Plaintiff could have reasonably believed that such harassing conduct was prohibited by FEHA or Title VII. Plaintiff therefore meets the first element of having engaged in a protected activity or activity he reasonably perceived was protected.

Second, Plaintiff alleges that Hansen demoted Plaintiff, satisfying the adverse employment action element. *Id.* at ¶ 21. However, Plaintiff does not explicitly allege that Hansen's actions were in retaliation for reporting his vulgar comments to human resources. As stated *supra*, Plaintiff had also previously questioned Hansen's judgment during a meeting and raised problems the department was having with non-conforming materials. *Id.* at ¶¶ 14; 19. Indeed, after one such meeting, Plaintiff alleges that Hansen pulled him aside and threatened to restructure the department if Plaintiff did not stop raising such problems. *Id*. at ¶ 19.[9] Accordingly, because the FAC does not specifically allege that Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity, Plaintiff fails to state a claim for retaliation

---

[9]To the extent that Plaintiff is alleging that questioning Hansen's judgment or raising problems with "non-conforming materials" is a protected activity under FEHA or Title VII, he has failed to provide any authority for this proposition.

**United States District Court**
For the Northern District of California

under either FEHA or Title VII.[10] Plaintiff's third and sixth causes of action are DISMISSED with leave to amend.

### IV.   Fifth Cause of Action: "Failure to Maintain Environment Free from Harassment - California Government Code Section 12940, et seq."

#### A.   Legal Standard

Employers must "take all reasonable steps to prevent . . . harassment from occurring." Cal. Gov. Code § 12940(k). This provision is not an independent basis for liability under FEHA; it is only a basis for liability where actual harassment occurred. *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1174 (9th Cir. 2001) (citing *Trujillo v. N. County Transit Dist*., 63 Cal.App.4th 280, 287-89 (1998)).

To discharge their obligation, employers must dissuade employees from engaging in unlawful conduct. *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991). The reasonableness of an employer's actions turn on its ability to stop the harassment. *Id.* "Employers send the wrong message to potential harassers when they do not discipline employees for sexual harassment." *Id.*

#### B.   Analysis

Plaintiff has alleged that Defendants did nothing to stop Hansen's behavior and instead condoned it. FAC at ¶ 33. However, he has not successfully plead a claim for sexual harassment. Accordingly, Plaintiff cannot succeed on a claim for failure to maintain an environment free from such harassment, and therefore Plaintiff's fifth cause of action is DISMISSED. If Plaintiff can successfully amend his sexual harassment causes of action, he is granted leave to re-allege his fifth cause of action for failure to maintain an environment free of harassment.

### V.   Seventh Cause of Action: "Intentional Infliction of Emotion Distress"

#### A.   Legal Standard

In order to state a cause of action for intentional infliction of emotional distress, a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless

---

[10]Plaintiff also alleges that Defendants continue to retaliate against Plaintiff, but now for filing complaints with the DFEH and EEOC. *Id.* at  ¶¶ 29-30. Participation in such proceedings is a protected activity. However, Plaintiff does not allege any adverse employment actions that have occurred after those proceedings began on August 17, 2004. Dumont Decl. Ex. A. Indeed, the actions Plaintiff complains of in paragraphs 29 and 30 occurred *before* August 17, 2004.

**United States District Court**
For the Northern District of California

1  disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme

2  emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's

3  outrageous conduct. *Trerice v. Blue Cross of California*, 209 Cal. App. 3d 878, 883 (1989); *see*

4  *Fletcher v. Western National Life Ins. Co.*, 10 Cal. App. 3d 376, 394 (1970).

5         Conduct, to be "outrageous" must be so extreme as to exceed all bounds of that usually tolerated in

6  a civilized society.  *Trerice*, 209 Cal. App. 3d at 883; *see Fowler v. Varian Associates, Inc.*, 196 Cal.

7  App. 3d 34, 44 (1987).  While the outrageousness of a defendant's conduct normally presents an issue of

8  fact to be determined by the trier of fact, the court may determine in the first instance, whether the

9  defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.

10  *Trerice*, 209 Cal. App. 3d at 883; *see Fowler*, 196 Cal. App. 3d at 44.        **B.**     **Analysis**

11         Plaintiff alleges that he has suffered extreme emotional distress in the form of severe headaches,

12  insomnia and stress. FAC ¶ 77(a). Plaintiff also alleges that Hansen sexually harassed him; a claim that, if

13  cognizable, is sufficient to demonstrate "outrageous conduct."

14         However, as discussed *supra*, Plaintiff has failed to sufficiently allege a claim for sexual harassment.

15  Beyond his harassment claim, Plaintiff has failed to allege any conduct so extreme as to exceed all bounds

16  of that usually tolerated in a civilized society. *Trerice*, 209 Cal. App. 3d at 883. In addition, without his

17  sexual harassment claim, Plaintiff's claim for intentional infliction of emotional distress is barred by

18  Workers' Compensation preemption. *Livitsanos v. Sup. Ct.*, 2 Cal. 4th 744, 754 (1992) (preemption

19  applies unless there is a violation of fundamental public policy); *Stevenson v. Superior Court*, 16 Cal. 4th

20  880, 889-90 (1997) (fundamental policy must be supported by either constitutional or statutory

21  provisions). Accordingly, Plaintiff's seventh cause of action is DISMISSED with leave to amend.

22  **VI.**    **Eighth Cause of Action: "Slander; Slander Per Se - Civil Code Section 46"**

23       **A.**    **Legal Standard**

24         Slander is a false and unprivileged oral communication that "tends directly to injure [one] in respect

25  to [one's] office, profession, trade, or business." Cal. Civil Code § 46(3). To establish a claim, Plaintiff

26  must show that: (1) the defendant made a statement to someone other than the plaintiff, (2) that the person

27  understood the statement to be about plaintiff, (3) that because of the facts and circumstances known to the

28  listener, the statement tended to injure plaintiff's reputation, (4) that the statement was false, (5) that plaintiff

suffered harm, and (6) that the statement was a substantial factor in causing the harm. *See* CACI No. 1701; *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999). Employers are liable for the slanderous remarks of their employees when made within the scope of employment. *Sanborn v. Chronicle Publishing Co.*, 18 Cal. 3d 406, 411 (1976).

Suits alleging defamation arising from employee performance reviews are met with "strong judicial disfavor." *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 964 (1993). Employee performance reviews reported to other employees are "statements to interested persons" and therefore privileged as long as they are not made with malice. *Kelly v. General Telephone Co.*, 136 Cal. App. 3d 278, 285 (1982). However, a false review motivated by "hatred or ill-will for the employee" will sufficiently plead malice to overcome a motion to dismiss. *Id.*

**B.   Analysis**

Plaintiff alleges that Hansen and Allen made negative oral representations about Plaintiff's job performance, abilities, work, and conduct. FAC at ¶ 79. The FAC alleges generally that Hansen belittled him in front of co-workers. *Id.* at ¶ 20. Plaintiff also alleges that Hansen told Bella Medina, one of the people whom Plaintiff had evaluated, that she had not received a promotion because of Plaintiff. *Id.* at ¶ 24. Hansen also allegedly told Plaintiff in front of his co-workers that "I thought you (Plaintiff) were so upset you were going to tear my head off," insinuating Plaintiff was going to physically hurt him. *Id.* Plaintiff further alleges that Allen in Human Resources divulged unidentified "confidential information" to her son, who worked in the same department as Plaintiff. *Id.* at ¶ 32. Allen allegedly told Plaintiff that he does not qualify for the "lead position" because he cannot work alone and does not know his department's procedures. *Id.* Plaintiff then alleges, nonsensically, that "Defendant Asuncion's slanderous remarks" have caused him harm. *Id.* at ¶ 80.[11]

**1.   Negative statements about Plaintiff's job performance**

Plaintiff alleges, in general fashion, that Allen and Hansen made negative statements about his job performance. As a preliminary matter, the content of the statements is not identified. Furthermore, Plaintiff has failed to allege that these statements were false. Moreover, he fails to allege that such statements, which

---

[11]There is no Defendant by the name "Asuncion" in this action.

might otherwise be privileged, were made with malice.

### 2.    "Belittling" statements made by Hansen

Plaintiff's allegations that Hansen belittled him in front of his co-workers fails to state a slander claim. First, other than the comment that "I thought you (Plaintiff) were so upset you were going to tear my head off," Plaintiff fails to identify any specific statements made by Hansen about Plaintiff to others. Second, Plaintiff does not identify to whom Hansen made those comments. Finally, Plaintiff has not alleged that the statements were false.

### 3.    Statement Hansen made to Bella Medina

Hansen told Bella Medina that "Plaintiff was the reason she did not get promoted." FAC at ¶ 24. As a preliminary matter, Plaintiff fails to explicitly allege that this was false. Plaintiff appears to allege that Hansen altered an evaluation that Plaintiff had conducted of Medina, who was allegedly subordinate to Plaintiff. *Id*. However, it is unclear from the FAC what about the evaluation was changed and how this affected Medina's promotion.

### 4.    Allen's statement to her son

Hansen also alleges that Allen divulged "confidential information" about Plaintiff to her son, who worked in Plaintiff's department. FAC at ¶ 32. Plaintiff, however, fails to allege what the "statements" were, fails to allege that they were false, and fails to allege that he was harmed by those statements.

### 5.    Allen's statement that Plaintiff "does not qualify for the lead position."

Plaintiff alleges that this statement was made to him, not a third party.

### C.    Conclusion of Slander claim

Plaintiff fails to identify a single statement published to a third party that states a claim for slander. Accordingly, this cause of action is DISMISSED with leave to amend.[12]

## VII.    <u>Ninth Cause of Action</u>: Negligent Infliction of Emotional Distress

### A.    Legal Standard

---

[12]In his Opposition, Plaintiff alleges for the first time that "Defendants sent a derogatory memo to all employees in the co." Opp. to MTD, 8. As a preliminary matter, it is unclear from the Opposition whether Plaintiff was the subject of the "derogatory memo." Moreover, "[i]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

1    The elements of a cause of action for negligence are: duty; negligent breach of duty; legal cause; and

2  damages caused by the negligent breach. *Friedman v. Merck & Co.,* 107 Cal.App.4th 454, 463 (2003)

3  (citations omitted). "Negligent infliction of emotional distress is a form of the tort of negligence." *Huggins v.*

4  *Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129 (1993).

5    "An employer's supervisory conduct is inherently intentional." *Semore v. Pool*, 217 Cal. App. 3d

6  1087, 1105 (1990) (internal citation omitted); *Edwards v. U.S. Fid. & Guar. Co.*, 848 F. Supp. 1460,

7  1466 (N.D. Cal. 1994), *aff'd without opinion*, 74 F.3d 1245 (9th Cir. 1996). Intentional conduct cannot

8  form the basis for a negligent infliction of emotional distress claim. *See Semore*, 217 Cal. App. 3d at 1105;

9  *Edwards*, 848 F. Supp. at 1466.

10    **B.      Analysis**

11    Plaintiff alleges that Defendants' conduct caused his emotional distress. FAC at ¶ 82. He alleges

12  that Microgenics affirmatively "ratified" Hansen's, Allen's, and Picht's conduct. *Id.* Such supervisory

13  conduct by an employer is inherently intentional, not negligent. Furthermore, Plaintiff has failed to provide

14  any argument to the contrary in his opposition. Accordingly, Plaintiff's ninth cause of action – negligent

15  infliction of emotional distress – is DISMISSED. If Plaintiff can amend this cause of action to allege the

16  negligent breach of a duty, he is granted leave to do so.

17  **VIII.   Tenth Cause of Action: "Breach of Implied-in-Fact Contract"**

18    **A.      Legal Standard**

19    California has a presumption that employment is at-will. Cal. Labor Code § 2922. Employment

20  conditions may be altered by express contract terms, or may be implied-in-fact by mutual conduct of the

21  parties. *Guz*, 24 Cal. 4th at 336. Such contractual agreements must be determined from the totality of the

22  circumstances; therefore, every such case "turns on its own facts." *Id.* at 337.

23    "There are no hard-and-fast rules for pleading such an agreement"; however, to state a cause of

24  action for breach of implied-in-fact contract, Plaintiff must plead facts that would allow a jury to rule for

25  him. *Gould v. Maryland Sound Industries, Inc.*, 31 Cal. App. 4th 1137, 1151 (1995). Such facts can

26  include "length of employment, the personnel policies or practices of the employer, the employer's conduct

27  . . . including oral assurances, promotions, pay increases, practices in the industry, and handbooks or

28  guidelines." *Id.* An employee handbook that provided for a safe working environment and procedures for

terminating for-cause can create a question of material fact as to the existence of an implied-in-fact contract. *Kelecheva v. Multivision Cable T.V. Corp.*, 18 Cal. App. 4th 521, 532-33 (1993).

Succeeding on a breach of implied-in-fact contract claim requires proving the same elements as a breach of contract claim, except that the contract is proved by the conduct of the parties, not the express wording of a written contract. *Kurlan v. Columbia Broadcasting System*, *Inc.*, 40 Cal. 2d 799, 811 (1953); *Thompson v. California Brewing Co.*, 150 Cal. App. 2d 469, 473 (1957) ("pleading the same facts as the [breach of contract cause of action] except that it alleges an implied in fact instead of an express contract . . . states a cause of action"). A cause of action for breach of contract must show that (1) the plaintiff and defendant entered into a contract, (2) that defendant breached the contract, and (3) that the breach caused harm. CACI No. 300; *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968).

**B.      Analysis**

Plaintiff alleges that he had an implied-in-fact contract with Defendants that provided that he would be employed "indefinitely as long as he carried out his duties," receive fair treatment, only have to resign for good cause, work in an environment free of harassment and discrimination, and not have his position or pay changed "without business justification." FAC at ¶ 85. Plaintiff alleges that this implied-in-fact contract is drawn from Microgenics' written personnel policies, but Plaintiff does not supply those policies or identify what specific policies he is referring to. *Id.* at ¶ 86(a). Plaintiff also alleges that established company policy prevents adverse employment actions without good cause, but Plaintiff does not provide any details about this "established policy" or cite to it. *Id.* at ¶ 86(b).

Plaintiff has been employed with Microgenics for five years and received pay increases, but Plaintiff does not include any other facts about the nature or provisions of the implied-in-fact agreement. *Id.* at ¶ 12. Plaintiff suggests that he received oral assurances of continued employment, but does not indicate when he received them or from whom. *Id.* at ¶ 86(c).

In *Gould*, the plaintiff alleged that there was an implied-in-fact contract that he would not be discharged except for good cause. The plaintiff's pleading only indicated that he had been working for his employer for three years and that his commission had been increased. 31 Cal. App. 4th at 1151. The plaintiff in *Gould* also alleged that he was told that he had become a "member" of the company and that they were looking for "long-term employees." *Id.* at 1152. The court in *Gould* affirmed the dismissal of the

**United States District Court**
For the Northern District of California

case because "vague references" and "oblique language" alone cannot establish an agreement. *Id.* Plaintiff, like Gould, merely alleges "vague references" that are insufficient to demonstrate that he had an implied-in-fact contract that he would be employed "indefinitely as long as he carried out his duties," receive fair treatment, only have to resign for good cause, work in an environment free of harassment and discrimination, and not have his position or pay changed "without business justification." FAC at ¶ 85.

Indeed, the only specific allegation Plaintiff makes suggesting an implied-in-fact contract is an allegation that under "section 202" of the policy manual Microgenics was prohibited from retaliating against employees who report unlawful discrimination and harassment. FAC at ¶ 23. Plaintiff alleges that this portion of the policy manual "follows the federal laws prohibiting such actions." *Id*. However, even if there was an implied-in-fact contract that Plaintiff would not suffer retaliation, Plaintiff has failed to allege a breach of this implied-in-fact contract because he has failed to sufficiently allege that he suffered retaliation. Accordingly, Plaintiff's claim for an implied-in-fact contract is DISMISSED with leave to amend.

## IX. <u>Eleventh Cause of Action</u>: "Breach of Covenant of Good Faith and Fair Dealing"

### A. Legal Standard

Where an employer's conduct is actionable as a breach of an implied-in-fact contract term, alleging a breach of the covenant of good faith and fair dealing with regard to that conduct is superfluous:

> [I]nsofar as the employer's acts are directly actionable as a breach of an implied-in-fact contract term, a claim that merely realleges that breach as a violation of the covenant is superfluous. This is because, as we explained at length in *Foley*, the remedy for breach of an employment agreement, including the covenant of good faith and fair dealing implied by law therein, is solely contractual. In the employment context, an implied covenant theory affords no separate measure of recovery, such as tort damages. (*Foley, supra*, 47 Cal.3d 654, 682-700.) . . . To the extent Guz's implied covenant cause of action seeks to impose limits on Bechtel's termination rights beyond those to which the parties actually agreed, the claim is invalid. To the extent the implied covenant claim seeks simply to invoke terms to which the parties did agree, it is superfluous. Guz's remedy, if any, for Bechtel's alleged violation of its personnel policies depends on proof that they were contract [] terms to which the parties actually agreed. The trial court thus properly dismissed the implied covenant cause of action.

*Guz*, 24 Cal.4th at 352 -353.

### B. Analysis

Plaintiff's eleventh cause of action – breach of the covenant of good faith and fair dealing – repeats the allegations of the tenth cause of action for breach of implied-in-fact contract, namely, that Defendants

**United States District Court**
For the Northern District of California

denied Plaintiff a harassment-free work environment, denied Plaintiff fair treatment, and demoted Plaintiff without cause. FAC at ¶ 95; *accord* FAC at ¶ 90. Because the causes of action for breach of implied-in-fact contract and breach of the covenant of good faith and fair dealing are duplicative, the good faith and fair dealing cause of action is superfluous to the implied-in-fact contract cause of action and is DISMISSED WITH PREJUDICE.

**X.     Twelfth Cause of Action: "Intentional Interference with Contractual Relations"**

**A.     Legal Standard**

An action for intentional interference with contractual relations requires that (1) plaintiff had a valid contract, (2) defendant had knowledge of the contract and intended to induce its breach, (3) the contract was breached, (4) the breach was caused by defendant's unjustified or wrongful conduct, and (5) the plaintiff suffered harm. *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 995 (1977). Such an action only exists where the defendant caused a breach of contract between the plaintiff and a third party. *Id.* at 995-96. Alternately phrased, only strangers to contracts may be liable for the tort of intentional interference with a contract. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

**B.     Analysis**

The FAC alleges this cause of action against all defendants. FAC at ¶ 97. Plaintiff's Complaint further alleges that Defendants encouraged Hansen, Allen, and Picht to cause "the employment contract between Plaintiff and Defendants to be breached." *Id.* at ¶ 99. As a preliminary matter, Plaintiff has not identified a valid and enforceable contract. Moreover, because Hansen, Allen and Picht are being sued in their capacity as representatives of Microgenics, they could not be third parties to a contract between Plaintiff and Microgenics, and therefore cannot be liable for the tort of intentional interference. *See CrossTalk Prod. Inc. v. Jacobson*, 65 Cal.App. 4th 631, 646 (1998). Accordingly, Plaintiff's twelfth cause of action – intentional interference with contractual relations – is DISMISSED WITH PREJUDICE.

**XI.     Thirteenth Cause of Action: "Violation of Business and Professions Code Section 17200"**

**A.     Legal Standard**

Unfair competition includes any unlawful, unfair, or fraudulent business acts. Cal. Bus. & Prof. Code § 17200. Section 17200 "borrows" violations of other laws and treats them as independently actionable unlawful practices. *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994). The

California Court of Appeal has included violations of FEHA under Section 17200's broad scope. *See Herr v. Nestle; U.S.A., Inc.*, 109 Cal. App. 4th 779, 782 (2003). Actual injury to competition is not required under Section 17200 and does not need to be alleged. *Alch v. Superior Court*, 122 Cal. App. 4th 339, 402 (Cal. Ct. App. 2004). California courts have since interpreted the *Herr* decision to stand for the principle that Section 17200 protects employees as well as consumers and competitors. *Id.* at 401.

### B.   Analysis

Plaintiff alleges that Defendants engaged in unfair business practices by violating "the California Constitution, the California Fair Employment and Housing Act and the Labor Code as alleged herein," incorporating all of Plaintiff's prior causes of action. FAC at ¶¶ 101-102. However, at no point in the FAC does Plaintiff allege a violation of the California Constitution or the California Labor Code. *See* FAC at ¶¶ 35-100 (alleging only violations of common law, FEHA, and Title VII). As discussed *supra*, Plaintiff does attempt to plead violations of FEHA, but fails to properly do so. Because Plaintiff has not pled a violation of any of the laws that Plaintiff claims create a basis for unfair business practice liability under Section 17200, Plaintiff's thirteenth cause of action is DISMISSED with leave to amend.

## XII.   Fourteenth Cause of Action: "Wrongful Adverse Employment Action in Violation of Public Policy"

### A.   Legal Standard

An action for wrongful demotion in violation of public policy will lie where (1) plaintiff was employed by defendant, (2) defendant demoted plaintiff, (3) the alleged violation of public policy was a motivating reason for plaintiff's demotion, and (4) the demotion caused plaintiff harm. *See* CACI No. 2430; *Haney v. Aramark Uniform Services, Inc.*, 121 Cal. App. 4th 623, 641 (2004).

### B.   Analysis

In the instant case, Plaintiff was employed by Microgenics and received a demotion and a pay decrease of $3.00 per hour. FAC at ¶ 22. Plaintiff alleges that the demotion was in retaliation "for [the] valid exercise of his legal rights." *Id.* at ¶ 106. While Retaliation for reporting sexual harassment would be a violation of public policy (Cal. Gov. Code. § 12940 et seq.) Plaintiff has not alleged a sufficient retaliation claim. Absent a sufficient allegation that Defendants violated public policy in demoting Plaintiff, he has not properly pled an action for wrongful demotion in violation of public policy. Accordingly, Plaintiff's

United States District Court
For the Northern District of California

1  fourteenth cause of action is DISMISSED with leave to amend.

2  **3.      MOTION TO STRIKE:**

3                                      **Legal Standard**

4          Under Federal Rule of Civil Procedure 12(f) the Court has the discretion to strike a pleading or

5  portions thereof.  *Federal Sav. and Loan v. Gemini Management*, 921 F.2d 241, 243 (9th Cir. 1990).

6  Rule 12(f) provides that a court "may order stricken from any pleading . . . any redundant, immaterial,

7  impertinent or scandalous matter." "'Immaterial' matter is that which has no essential or important

8  relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d

9  1524, 1527 (9th Cir.1993) (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and

10  Procedure § 1382, at 706-07 (1990)), *rev'd on other grounds*, 510 U.S. 517 (1994). "'Impertinent'

11  matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*

12         "[T]he function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that

13  must arise from litigating spurious issues by dispensing with those issues prior to

14  trial . . . ." *Sidney-Vinson v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  Rule 12(f) motions to

15  strike are "generally not granted unless it is clear that the matter sought to be stricken could have no

16  possible bearing on the subject matter of the litigation." *Rosales v. Citibank, Federal Sav. Bank*, 133 F.

17  Supp.2d 1177, 1179 (N.D. Cal. 2001).  Any doubt concerning the import of the allegations to be stricken

18  weighs in favor of denying the motion to strike. *See In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp.

19  2d 955, 965 (C.D. Cal. 2000).

20                                      **Discussion**

21  **I.      References to California Labor Code §§ 6310 & 1102.5**

22         **A.      Labor Code § 6310**

23         Microgenics moves to strike the reference to California Labor Code §§ 6310 in the FAC's caption

24  because no reference to it appeared in the body of the FAC. Motion to Strike ("MTS") at 7. Plaintiff's

25  response concedes that any reference to § 6310 is misplaced. Resp. ¶ 1. Accordingly, the Court GRANTS

26  the motion to strike with regard to Cal. Labor Code § 6310.

27         **B.      Labor Code § 1102.5**

28         Microgenics also moves to strike the reference to California Labor Code § 1102.5 in the FAC's

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   caption because no reference to it appeared in the body of the FAC. Plaintiff opposes the motion to strike

2   references to this section because he "inadvertently left it out" of the First Amended Complaint. *Id.*

3   Accordingly, the Court GRANTS the motion to strike the reference to § 1102.5 in the caption of the FAC

4   because it is undisputed that there are no allegations regarding § 1102.5 in the body of the FAC. To the

5   extent that Plaintiff can allege a claim under that section, he is granted leave to do so.

6   **II.      Demand for a Jury Trial**

7           Microgenics moves to strike Plaintiff's request for a jury trial. MTS at 8. Plaintiff's original

8   complaint filed on January 21, 2005 in Alameda County Superior Court contained no jury demand.

9   Dumont Decl. Ex. A. The case was removed to federal court on February 23, 2005. [Docket No. 1].

10  Plaintiff requested a jury trial in the First Amended Complaint filed on April 6, 2005.

11          **A.      Legal Standard**

12          Federal Rule of Civil Procedure 38(b) requires the requesting party to file a demand for a jury trial

13  within 10 days of the last pleading directed at the issue. Fed. R. Civ. P. 38(b). When a case is removed to

14  federal court prior to the filing of an answer, a demand for jury trial must be filed no later than 10 days after

15  service of the answer. *See Pacific Fisheries Corp. v. H.I.H. Cas. & Gen. Ins., Ltd.*, 239 F.3d 1000,

16  1002 n.2 (9th Cir. 2001).

17          **B.      Analysis**

18          Plaintiff did not file a request for jury trial until more than forty days after removal to federal court.

19  However, because no answer has been filed, Plaintiff's request for jury trial on April 6, 2005 was timely

20  within the meaning of Rule 38(b). Accordingly, the motion to strike Plaintiff's request for jury trial is

21  DENIED.

22  **III.     Inclusion of Employees as Parties to the Suit**

23          Microgenics moves to strike any reference to Tom Hansen, Marianne Allen, and Bill Picht as

24  "parties" to the present action. MTS at 9. Hansen, Allen, and Picht are not named in the caption of the

25  FAC, but are referred to as "parties" in the text of the FAC. *See* FAC at ¶¶ 6-8 (listing under "Parties"

26  Hansen, Allen, and Picht). Microgenics moves to strike the references to Hansen, Allen, and Picht as

27  parties because they are being sued in their representative, rather than individual capacities. MTS at 9.

28  Plaintiff does not dispute that Hansen, Allen and Picht are only being sued in their representative capacities.

**United States District Court**
For the Northern District of California

1  Crowell Decl., ¶ 2a. Thus, to the extent that the FAC seeks to name Hansen, Allen and Picht in their

2  individual capacities, such references are STRICKEN.

3      Microgenics, however, provides no authority in support of its position that these defendants should

4  be entirely stricken as parties simply because they are being sued in their representative capacities. Without

5  such authority, Microgenics has failed to meet its burden. Accordingly, to the extent Microgenics asserts

6  that reference to Hansen, Allen and Picht as "parties" should be stricken entirely, the motion is DENIED.[13]

7  **IV.     References to "Defendant Asuncion"**

8      Microgenics also moves to strike all references to "Defendant Asuncion" from the FAC. MTS at

9  10. Plaintiff agrees that references to "Defendant Asuncion" were included erroneously. Resp. ¶ 4.

10  Accordingly, the Court GRANTS the motion to strike all references to "Defendant Asuncion."

11  **V.     Inclusion of Apogent Technologies, Inc. and Fisher Scientific International, Inc. as Parties**

12  **to the Suit**

13      Microgenics asserts that Apogent Technologies and Fisher Scientific should be stricken from the

14  FAC because they have not been served. MTS, 11. As a preliminary matter, Plaintiff appears to argue that

15  Fisher Scientific was served, and that Plaintiff intended to also serve Apogent. Opp. to MTS, 2-3. In any

16  event, pursuant to Fed. R. Civ. P. 4(m), un-served defendants cannot simply be stricken from the complaint

17  by another defendant – they must be dismissed, either by motion or by the Court after giving notice to the

18  plaintiff. *See* Fed. R. Civ. P. 4(m). Accordingly, Microgenics' motion to strike Apogent Technologies and

19  Fisher Scientific is DENIED.

20  **4.     MOTION FOR MORE DEFINITE STATEMENT**

21                **Legal Standard**

22      Rule 12(e) of the Federal Rules of Civil Procedure provides that "[i]f a pleading is so vague or

23  ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move

24  for a more definite statement before interposing a responsive pleading."  Motions for a more definite

25  statement are "proper only where the complaint is so indefinite that the defendant cannot ascertain the

26

27      [13]Microgenics also alleges that Plaintiff had agreed to dismiss the three employees as defendants.
Dumont Decl. ¶ 9. Plaintiff, however, disputes this, and asserts that he only agreed to dismiss them in their

28  individual, rather than representative, capacities. Crowell Decl. ¶ 2a.

nature of the claim being asserted." *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).  A plaintiff need only set forth enough details so as to provide the defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery." *Self Directed Placement Corp.v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990).

Rule 12(e) motions are viewed with disfavor and are rarely granted.  *Id.*  The inability to ascertain all of the facts from a complaint is not an adequate ground for a more definite statement, as these concerns can be addressed through discovery.  *See Resolution Trust Corp. v. Gershman*, 829 F. Supp. 1095, 1103 (E.D. Mo. 1993) ("[r]ule 12(e) provides a remedy for unintelligible pleadings; it is not intended to correct a claimed lack of detail."); *see also Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Ca. 1981) ("[d]ue to the liberal pleading standards in the federal courts . . . and the availability of extensive discovery, the availability of a motion for a more definite statement has been substantially restricted").

### Discussion

Here, while the FAC was far from crystal clear, it provided the defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery. *Self Directed Placement Corp.*, 908 F.2d at 466. Indeed, as demonstrated above, the Court was able to evaluate each of Plaintiff's causes of action. Moreover, any concern that Defendant is unable to adequately respond to the FAC is rendered moot because the Court has dismissed Plaintiff's FAC and provided Plaintiff with guidance on how to amend his claims. Accordingly, the motion for a more definite statement is DENIED.

### CONCLUSION

For the foregoing reasons:

1.     The Motion for Leave to file the Proposed SAC is DENIED;

2.     The Motion to Dismiss is GRANTED, and Plaintiff is granted leave to amend as described herein;

3.     The Motion to Strike is GRANTED IN PART and DENIED IN PART;

4.     The Motion for More Definite Statement is DENIED.

23

1

2      IT IS SO ORDERED.

3

4

5  Dated: 7-27-05                        SAUNDRA BROWN ARMSTRONG

6                                    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California